## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SCOTT CORFIELD,<br><br>PLAINTIFF,<br><br>V.<br><br>SUSE, LLC, A MASSACHUSETTS LIMITED LIABILITY COMPANY,<br><br>DEFENDANT. | **MEMORANDUM DECISION & ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Case No. 2:21-cv-00525-JNP**<br><br>**District Judge Jill N. Parrish** |

Before the court is a motion for summary judgment filed by Defendant SUSE, LLC ("SUSE"). The court originally scheduled oral argument on this motion for August 1, 2023. ECF No. 51. However, having reviewed the briefing, the court concludes that oral argument is no longer necessary. Accordingly, the court vacates the hearing set for August 1, 2023, and GRANTS this motion for summary judgment.

## BACKGROUND

On September 3, 2021, Plaintiff Scott Corfield ("Corfield") filed a complaint against SUSE alleging that SUSE had violated Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Compl. 16–21, ECF No. 2. Specifically, Corfield alleged that SUSE had unlawfully discriminated against him based on his gender and age, had created a hostile work environment, and had retaliated against Corfield by terminating him shortly after he reported gender and age

discrimination claims. *Id.* SUSE moves for summary judgment on all four of Corfield's claims. Def.'s Mot. Summ. J. 2, ECF No. 26.

Corfield's employment with SUSE began in 2001 when Novell, Inc., a predecessor of SUSE, hired him as a marketing communications manager. Corfield Dep. 15:20–16:2, ECF No. 41-2. Corfield's "primary job responsibilities included advancing SUSE's brand image [] and building awareness and demand for SUSE's products and services." Utah Antidiscrimination & Labor Div. Determination & Order No. C0-0221 (hereinafter "UALD Determination"), Ex. H, ECF No. 26-9 at 2. Until 2019, which is the year the events relating to this employment dispute occurred, Corfield had received excellent performance reviews. Corfield Dep. 327:19–23, 341:23–342:7, ECF No. 41-2.

In July 2019, SUSE hired Ms. Melissa Di Donato ("Di Donato") as its new CEO. Di Donato Dep. 9:6–9:11, ECF No. 41-2. Shortly thereafter, SUSE hired April Moh ("Moh") as its new Chief Communications Officer. Moh Dep. 25:18–23, ECF No. 41-2. In August 2019, Michael Miller ("Miller"), President of Corporate Development and Strategic Alliances at SUSE, informed Corfield that SUSE was reorganizing and that going forward, Corfield would directly report to Moh. Corfield Dep. 22:1–9, ECF No. 41-2. Corfield asked Miller if he would receive a promotion as a result of the reorganization as Moh's other direct reports all occupied a higher position at SUSE than Corfield. Corfield Dep. 22:13–23:25, ECF No. 41-2. No one at SUSE told Corfield that he would be promoted as a result of the organizational change. *Id.* at 24:2–6.

On August 20, 2019, Moh called Corfield to introduce herself. *Id.* at 24:7–25:11. Shortly thereafter, Moh travelled to Provo, Utah to meet with Corfield and her other direct reports in-person. *Id.* at 25:2–26:1. During the team meeting, Moh referred to her direct reports as her "lieutenants," which Corfield found to be "very demeaning." *Id.* at 58:13–59:4. Although Corfield

2

acknowledged that Moh was his superior and that "lieutenant" does not contain age or gender based associations, Corfield maintains that "[Moh] as a woman, calling three—three men that were reporting directly to her as lieutenants was just demeaning." *Id.* at 61:15–18. In addition to conducting a team meeting, Moh met with each of her reports individually. During Moh's one-on-one meeting with Corfield, Corfield requested a promotion. *Id.* at 25:7. Moh hesitated, and then told Corfield that she would "she would look into it." *Id.* at 28:17–29:1.

That evening, Moh invited Corfield's team to dinner. Moh called Austin Johnson ("Johnson"), one of Corfield's male employees, "April Ludgate" in reference to the television sitcom Parks and Recreation. *Id.* at 45:9–24. According to Corfield, referring to someone as "April Ludgate" is offensive because April Ludgate is "apathetic" and "lazy." *Id.* at 48:14–21. Moh asserts that she referred to Johnson as "April Ludgate" because his sense of humor reminded her of April Ludgate's character. *See* Moh Dep. 116:19–21, ECF No. 41-2 ("I have referred to his sense of humor reminding me of my favorite character, April Ludgate, on Parks and Recreation."). Corfield asserts that by calling Mr. Johnson "April Ludgate," Moh created a hostile work environment. Corfield Dep. 45:9–55:9, ECF No. 41-2. Although Corfield initially struggled to elucidate how referring to an individual as "April Ludgate" establishes gender animus, he eventually articulated that by calling Mr. Johnson "April Ludgate," Moh was "attacking [Mr. Johnson] as an individual, as a man" because calling a man by a fictional woman's name demonstrates gender bias. *Id.* at 47:22–25, 54:19–22.

On August 29, 2019, Jeanne Lyon ("Lyon"), HR Consultant and Investigator, emailed Moh and Miller a copy of Corfield's completed off-cycle corporate compensation promotion form. Email from Jeanne Lyon, Consulting HR, SUSE, to April Moh, Chief Commc'n Officer, SUSE (Aug. 29, 2019, 7:21 a.m.), ECF No. 41-2. Miller and Moh indicated that they supported Corfield's

promotion. Email from Michael Miller, President Corp. Dev. & Strategic All., SUSE, to April Moh, Chief Commc'n Officer, SUSE (Aug. 29, 2019, 5:09 p.m.), ECF No. 41-2; Email from April Moh Chief Commc'n Officer, SUSE, to Jeanne Lyon, Consulting HR, SUSE (Aug. 30, 2019, 2:06 p.m.), ECF No. 41-2.

On September 3, 2019, Moh sent Corfield and Paul Fox ("Fox"), another direct report, a message stating, "Good job, boys." Moh Dep. 122:23–23:1, ECF No. 41-2; Corfield Dep. 94:25–100:19, ECF No. 41-2. Corfield asserts that Moh demeaned him by referring to him as a "boy." Corfield Dep. 97:14-100:2, ECF No. 41-2. Moreover, Corfield asserts that Moh's usage of the word "boy" indicates that she has "got issues with men." *Id.* at 99:6.

During this same conversation, Moh recalls "sharing a laugh together because he had talked about, you know, offering to go out to get makeup for our CEO." Moh Dep. 123:12–16, ECF No. 41-2. During a live event, SUSE CEO Di Donato had requested that someone fetch her some makeup. Corfield Dep. 186:9–187:1, ECF No. 41-2. Someone—the parties cannot recall whom—asked Corfield and Fox to buy the makeup. Corfield asserts that purchasing makeup is a task that should be performed by a woman and that it was humiliating to "ask[] two guys to go get makeup for the CEO." *Id.* at 187:3–7. Although Corfield acknowledges that Moh did not assign him the task of purchasing makeup, Corfield asserts that Moh's later reference to the underlying act was offensive asking men to buy makeup is demeaning. *Id.* at 184:2–4. ("It was sending Paul and I off to get makeup for our CEO at a store, sending men to go do that.").

Around the same time, Moh requested that Corfield create a new logo for SUSE's Women in Technology ("WIT") group. *Id.* at 81:8–93:10. Moh was unsatisfied with the designs that Corfield's team had presented. According to Moh, one of the proposed designs "looked like a woman with her legs up." *Id.* at 81:12–16. Moh asked Corfield whether Johnson, a male designer

4

on Corfield's team, designed the "salacious" logo. *Id.* at 82:13–83:19. Sydney Robertson, a female member of Corfield's team, had designed the logo. *Id.* at 90:8–92:4. Corfield asserts that Moh's misattribution of the logo to a male employee, when in fact, a female employee had designed the logo, demonstrates Moh's sexist bias. *Id.* at 83:23–24.

On September 12, 2019, Moh emailed the Human Resources ("HR") Department at SUSE and informed them that she "would like to postpone the enactment of [Corfield]'s offcycle promotion until December. This is not to say I'd like to pull the plug on his promotion." Email from April Moh, Chief Commc'n Officer, SUSE, to Steve Gilliver, Vice President, SUSE Human Resources, Jeanne Lyon, Consulting HR, SUSE, and Michael Miller, President Corp. Dev. & Strategic All., SUSE, (Sept. 12, 2019 at 11:11 a.m.), ECF No. 26-3 at 28. Although Moh believed that Corfield "has a lot of good qualities, [he] struggles with ownership and accountability." *Id.* Moh wanted "extra time to coach him into the director role." *Id.* On September 24, 2019, Moh informed Corfield that his promotion had been delayed. Corfield Dep. 41:10–14, ECF No. 41-2. Moh explained that the delay was due in part to concerns that had been expressed by Miller and Jo Harris ("Harris"), the head of SUSE marketing. *Id.* at 35:22–36:13; Moh Dep. 103:14–24, ECF No. 41-2.

On September 12, 2019, after Moh had emailed HR, Joanne Eames ("Eames"), Head of Global Marketing Operations and Campaigns at SUSE, emailed Moh conveying additional concerns about Corfield's work. *See* Email from Joanne Eames, Head of Glob. Mktg. Operations & Campaigns, SUSE, to April Moh, Chief Commc'n Offier, SUSE (Sept. 12, 2019, 6:56 p.m.) ECF No. 26-2 at 70 ("I'm getting more concerned from two conversations with [Corfield], yesterday and today with my Staff, on deadlines for the website branding rework, what is/are the objectives for the project and his confusion/misunderstanding of platform . . . ."). Corfield contends

5

that Eames' mischaracterized the scope of his job responsibilities in her email. *See* Pl.'s Mem. Opp'n 7, ECF No. 41.

## I.     Kaizen Incident

As part of his role as senior marketing manager, Corfield was responsible for reviewing and sending companywide email communications. Corfield Dep. 149:20–150:15; Compl. 8, ECF No. 2 ("Moh sent an email to Corfield prohibiting him from sending future emails . . . thus eliminating one of Corfield's essential job duties."). On September 17, 2019, Corfield sent an email announcing that SUSE intended to launch a project entitled "SUSE Kaizen." Email from Oliver Kurz and SUSE Kaizen Bootstrap Team to all SUSE employees (Sept. 17, 2019 2:28 p.m.) (hereinafter "Kaizen Email"), ECF No. 26-3 at 23. Kaizen was a controversial project. Di Donato Dep. 44:10–44:16, ECF No. 41-2. The email stated that SUSE had adopted the project in part due to "the recent decision announced by our CEO Melissa Di Donato." Kaizen Email, ECF No. 26-3 at 23.

Although Di Donato did not support the Kaizen project, she did not have the authority to stop it. Di Donato Dep. 46:6–12, ECF No. 41-2. Di Donato believed that Corfield's email misstated her opinions. *Id.* at 46:19–48:8. Although SUSE previously did not have a rule that required employees to obtain CEO approval before including the CEO's name in an email, Di Donato believed that Corfield should have known better than to send the companywide email without obtaining her approval first. *Id.* Corfield asserts that he should not be held responsible for the Kaizen Email because he circulated a draft of the email to Moh, who did not object to the contents. Pl.'s Mem. Opp'n 38, ECF No. 41. Di Donato conveyed her concerns about Corfield to Moh. Moh Dep. 151:14–18. As a result, Moh reassigned Corfield's mass email duties and implemented an internal review process for companywide communications. *Id.* at 152:2–153-2.

6

## II.    SALES SUMMIT & SUSECON

One of Corfield's primary responsibilities at SUSE was to design a theme for two annual SUSE events, Sales Summit and SUSECON. Corfield Dep. 120:9–14. Corfield asserts that Moh unnecessarily criticized the way that Corfield approached the Sales Summit event. *Id.* at 111:11–124:23. Specifically, after Corfield had sent an email to Paul Devlin ("Devlin") asking whether SUSE would be willing to pay for copyright images for the Sales Summit event, Moh informed Corfield that he should focus on offering workarounds rather than roadblocks. *Id.* at 114:7–120:1; Moh Dep. 77:19–79:6, ECF No. 41-2. According to Corfield, the fact that Devlin, who had "the final say for Sales Summit" liked the designs meant that "[Moh] just didn't really know what she was talking about." Corfield Dep. 218:11–20, 115:13–15, ECF No. 41-2. Although Corfield conceded that Moh's email did not contain disrespectful language, he was affronted by "[j]ust the sheer fact that she's bringing it up." *Id.* at 114:1–6.

Corfield also alleges that Moh created a hostile work environment by accelerating the timelines and deadlines for SUSECON and Sales Summit. *Id.* at 120:15–18. While Corfield's team typically spent six months preparing for SUSECON and three months preparing for Sales Summit, Moh informed Corfield that he only had six weeks to complete each project. *Id.* at 120:9–14; 121:1–7. Moreover, Corfield asserts that Moh did not care about the fact that his team was short-staffed as two of his employees had recently resigned. *Id.* at 121:12–17 ("There was not one word from her, any empathy, any caring about the situation we were in, providing any kind of help. It was just always berating, criticizing, and just mocking the work that we were doing, we were trying to do."). Moh testified that she had spoken with Corfield regarding his team's bandwidth and that

7

she had planned to replace the two employees with a principal designer and a contractor. Moh Dep. 40:1–11, ECF No. 41-2.

## III.    Jessica Park Interview

Moh referred Jessica Park ("Park"), who Moh had worked with previously, for the principal designer role on Corfield's team. Corfield Dep. 164:18–166:7, ECF No. 41-2; Moh Dep. 52:25–53:1, ECF No. 41-2. In mid-September, Corfield and Johnson interviewed Park. Corfield Dep. 174:5–7, ECF No. 41-2. Corfield informed Moh that he believed that Park was an impressive candidate. *Id.* at 174:10–18 ("I was impressed with her communication skills . . . [a]nd she definitely had that [creative] ability that . . . I was really impressed with."). Moh offered Park the position. Messages from April Moh to Jessica Park (Sept. 13, 2019), ECF No. 41-2 at 279–282.

However, Park declined the offer and withdrew from the process. Corfield Dep. 177:5–8. Park informed Moh that she did not want to join Corfield's team as she "felt that [Corfield] struggles with the big picture . . . and [during the interview, she] had to steer the conversation back to the original purpose of the call." Email from Jessica Park to April Moh (Oct. 8, 2019, 1:12 p.m.), ECF No. 41-2 at 278. Park explained that Corfield and Johnson had spent the majority of the interview lambasting current SUSE leadership. *Id.* More bluntly stated, Park "did [not] want to step into a political []hole." Moh Dep. 53:4–24, ECF No. 41-2; Corfield Dep. 285:18–25, ECF No. 41-2. Shortly thereafter, Moh removed Corfield from the interviewing process. Corfield Dep. 179:20–181:11, ECF No. 41-2.

## IV.    Decision to Terminate

On September 20, 2019, Corfield requested a confidential meeting with Moh's direct supervisor, Michael Miller ("Miller"). Email from Scott Corfield, Senior Marketing Manager, SUSE, to Michael Miller, President Corp. Dev. & Strategic All., SUSE (Sept. 20, 2019, 2:13 a.m.),

ECF No. 41-2 at 341. Miller responded that he was unavailable that day. *Id.* After receiving Corfield's email, Miller informed Moh that Corfield had requested a confidential meeting. Moh Dep. 147:13–25, ECF No. 41-2. Miller asked Moh "whether there was anything that he need[ed] to be aware of." *Id.* at 147:24–148:24. Moh informed Miller that she was talking with Corfield about ways to improve his performance. *Id.*

On September 21, 2019, Moh sent Lyon, the HR representative who was assigned to work with Moh, a draft Performance Improvement Plan ("PIP") for Corfield. Email from April Moh Chief Commc'n Officer, SUSE, to Jeanne Lyon, Consulting HR, SUSE (Sept. 21, 2019 1:53 p.m.) (hereinafter "PIP Email"), ECF No. 26-3 at 29. Moh listed several areas that she observed Corfield struggling in, which included the Project Kaizen email, the WIT logo, a "[h]abit of misrepresenting information/ causing confusion amongst other team members," an "[e]xtreme lack of self-awareness and inability to take feedback constructively," and the Jessica Park interview. *Id.* In terms of improvements, Moh wanted Corfield to develop an "[a]bility to accept and enact upon feedback swiftly," improve his overall work quality, and "get SUSECON design signed off and approved before the first week of October." *Id.*

Moh scheduled a meeting with Lyon and Matthew Hall ("Hall"), who served as an attorney for SUSE, to discuss the PIP on September 23, 2019 at 8:00 a.m. Pacific time. Meeting Invitation (Sept. 23, 2019, 8:00 a.m. PDT), ECF No. 41-2 at 283. Initially, Moh intended to put Corfield on a PIP. Moh Dep. 167:1–3. However, Hall recommended terminating Corfield instead. Hall Dep. 26:13–27:16 ("[T]he kindest and most professional thing to do, given the severe degradation of the employment relationship, would be to terminate him. . . . Perhaps this is me tooting my own horn too much, but it was driven by my recommendation."). Hall asked Moh whether she had any reason to believe that Corfield would claim that he was being terminated on the basis of his

9

membership in a protected class. *Id.* at 27:17–28:4. Moh responded "[n]o, absolutely not." *Id.* By the conclusion of the September 23, 2019 meeting, Moh, Hall, and Lyon had jointly decided to terminate Corfield. *Id.* at 28:18–23.

The same day that Moh was meeting with Lyon and Hall, Corfield had a thirty-minute phone call with Miller. Miller Dep. 26:4–12; 29:1–23, ECF No. 41-2 at 266; Corfield Dep. 189:3–14, ECF No. 41-2 at 49. Although neither party could recall when the call occurred, Miller later sent Lyon an email indicating that the call occurred at 9:30 a.m. Pacific time. Email from Michael Miller, President Corp. Dev. & Strategic All., SUSE, to Jeanne Lyon, Consulting HR, SUSE, (Oct. 1, 2019, 6:49 a.m. PDT), ECF No. 41-2 at 439. Corfield discussed the Kaizen email, the women in tech logo, and concerns he had with Moh. *Id.*; Corfield Dep. 196:17–25 ("But as I got into the conversation with Mr. Miller, I covered everything. I covered the fact that she had made comments to me of calling me a lieutenant, calling me a boy, that I[] had been sent on this errand to get makeup."). Miller did not tell Moh about his conversation with Corfield. Miller Dep. 36:24–37:1, ECF No. 41-2 at 268.

On September 30, 2019, Corfield filed a formal complaint against Moh with Steve Gilliver ("Gilliver"), Vice President of SUSE Human Resources. Gilliver Dep. 12:19-13:24; Email from Scott Corfield, Senior Marketing Manager, SUSE, to Steve Gilliver, Vice President Human Resources, SUSE, (Sept. 30, 2019, 5:27 p.m.), ECF No. 41-2 at 445 ("I feel my manager, April Moh, may be discriminating against me based on my gender, age and religion, and is creating a hostile work environment. I am also extremely fearful that once she is made aware of these concerns that she will retaliate against me.").

Gilliver asked Hall to provide legal advice on how SUSE should proceed. Email from Steve Gilliver, Vice President Human Resources, SUSE, to Matthew Hall, Counsel, SUSE (Sept. 30,

2019, 12:57 p.m.), ECF No. 41-2 at 443[1]. Hall informed Gilliver that Corfield's claims were "likely specious and unfounded." Email from Matthew Hall, Counsel, SUSE, to Steve Gilliver, Vice President Human Resources, SUSE (Sep. 30, 2019, 8:23 p.m.), ECF No. 41-2 at 443. Nevertheless, SUSE had "an affirmative duty to investigate." *Id.* Hall recommended that Gilliver include Lyon in the investigation as "she and I have worked on similar claims in the past and have excellent foundation from which to proceed." *Id.*

After reviewing Corfield's complaint, Lyon recommended "[d]elay[ing] the termination of [Corfield] until we can perform the investigations in a proper manner." Email from Jeanne Lyon, Consulting HR, SUSE, to Steve Gilliver, Vice President Human Resources, SUSE, (Sep. 30, 2019, 5:06 p.m.), ECF No. 41-2 at 441. Specifically, Lyon informed Gilliver that they would need to cancel a meeting between an HR employee and Moh that was originally scheduled for that afternoon "which was designed to finali[z]e the plans for the Wednesday termination meeting with [Corfield]." *Id.*

Gilliver assigned Lyon the task of investigating Corfield's claims. Gilliver Dep. 46:18–47:25, ECF No. 41-2 at 459. Lyon interviewed Miller, Moh, and Corfield. Lyon Dep. 62:24–66:23, ECF No. 41-2 at 301–02. Gilliver reviewed Lyon's interview summaries and the results of her investigation and concluded that "there was no evidence that backed up [Corfield's discrimination] claims." Gilliver Dep. 66:1–68:4, ECF No. 41-2 at 464. Approximately two weeks later, on October 29, 2019, SUSE terminated Corfield. Corfield Dep. 254:20–55:7, ECF No. 41-2 at 66. During the termination meeting, Moh informed Corfield that he was being

---

[1] Gilliver was located in Britain and sending emails in British Standard Time ("BST"). Corfield sent his emails from MDT and Moh sent her emails PDT. Because the events occurred in multiple time zones, the court preserves the time stamps included in the exhibits.

terminated for "failure of leadership, for the complete inability to accept constructive feedback, and because his role was being eliminated." UALD Determination, ECF No. 26-9 at 2 (internal quotation omitted).

## V.      Post-Termination Conduct

In the immediate aftermath of Corfield's termination, Moh reassigned Corfield's job responsibilities to Paul Fox ("Fox") and Hannah Lunt ("Lunt"). "Fox assumed Corfield's administrative and managerial duties" and Lunt "oversaw completion of some of Corfield's projects." Def.'s Resp. to Pl.'s First Set Written Disc. to Def., Interrog. No. 8, ECF No. 26-8.

Moh eliminated Corfield's previous team. *See* Moh Dep. 216:19–17:17 ("[Corfield's] team ceased to exist when [Corfield] was terminated."). "In its place and actually as an uplevel team, [Moh] created the brand team." *Id.* Moh "sunsetted the global newsletter," shifted customer storytelling to a separate team, and held individual teams responsible for sending out their own mass emails. *Id.* at 217:18–218:11.

In November 2019, Moh hired Spencer Davis ("Davis") for a principal designer role.  *Id.* at 110:17–13:4. This is the same position that Corfield and Johnson had initially interviewed Park for. *Id.* No one at SUSE told Moh that hiring Davis, who is also a man, would help provide SUSE with a defense to this case. *Id.* at 110:23–11:2. Corfield, as the senior marketing communications manager, would have supervised the principal designer. Moh did not know Davis's age or whether Davis was younger than Corfield. *Id.* at 113:7–12. Moh later promoted Davis to the director of the brand team. *Id.* at 225:7–26:8. Davis inherited several of Corfield's previous responsibilities, including "oversee[ing] creatives that represent the company," managing design services requests, and serving as "lead creative on company events like Sales Summit and SUSECON." *Id.* at 225:16–25.

12

On March 18, 2020, Corfield filed a complaint with the Utah Antidiscrimination and Labor Division ("UALD"). UALD Determination at 2, ECF No. 26-9. Corfield alleged that SUSE had "discriminated against him based on his gender and age, and unlawfully retaliated against him." *Id.* UALD determined that Corfield had "failed to establish his prima facie case of discrimination or harassment based upon gender or age, or that he was subjected to retaliation." *Id.* at 9 ("The facts in the record . . . indicate there is NO REASONABLE CAUSE to believe [SUSE] discriminated against [Corfield]."). Corfield filed this complaint on September 3, 2021. Compl., ECF No. 2.

## VI.   Similarly Situated Employees

Corfield alleged that Moh "was holding Corfield to a different standard than she held other comparable employees who were younger or female." *Id.* at 7. He identified three employees who he believed received preferential treatment: Lunt, Kellie Drenner ("Drenner"), and Sara Matheson, née Stephens ("Matheson"). *Id.* Lunt was a marketing communications manager who Corfield directly supervised. Corfield Dep. 294:22–24, ECF No. 41-2 at 76. Lunt had been hired as a manager before Moh joined SUSE and had less than six months of experience at SUSE. *Id.* at 295:3–296:1. Moh hired Drenner as a director for SUSE's integrated communications team in 2019. Moh Dep. 23:8–9, ECF No. 41-2 at 153. Moh terminated Drenner near the end of 2021. *Id.* at 23:18–22. Moh hired Matheson as a senior manager for the North American public relations team in 2019. *Id.* at 113:13–14:12.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the movant has met this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted).

At summary judgment, the court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party." *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008). However, this does not mean that nonmovants may "defeat summary judgment by relying on 'ignorance of the facts, on speculation, or on suspicion.'" *Genzer v. James River Ins. Co.*, 934 F.3d 1156, 1160 (10th Cir. 2019) (citation omitted). "Rather, '[t]o defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise.'" *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019) (alteration in original) (citation omitted). Additionally, "at the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott*, 550 U.S. at 380.

## ANALYSIS

Corfield alleges that SUSE discriminated against him on the basis of his gender and age, created a hostile work environment, and retaliated against him for engaging in a protected activity. Compl., ECF No. 2 at 16–21. Because Corfield relies on circumstantial evidence, the court must apply the *McDonnell-Douglas* burden-shifting test to each of his claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Guy v. McDonough*, No. 20-6158, 2021 WL 3854764, at *2 (10th Cir. Aug. 30, 2021) (explaining that a plaintiff who lacks direct evidence of

14

discrimination, must prove his case "circumstantially using the three-step *McDonnell-Douglas* framework.").

The *McDonell-Douglas* framework consists of three steps. First, the plaintiff must provide evidence that supports a prima facie discrimination claim. *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004). Once an employee establishes a prima facie claim, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for its decision." *McDonnell Douglas Corp.*, 411 U.S at 802. During these first two stages, "[t]he burden on the employee to establish a prima facie case is light, as is the burden on the employer to come back with a legitimate nondiscriminatory reason." *Guy*, 2021 WL 3854764, at *2. At the third stage, "the ball returns to the plaintiff who must show the employer's stated reasons are pretextual." *Barrett v. Salt Lake Cnty.*, 754 F.3d 864, 867 (10th Cir. 2014).

## I.      Gender Discrimination

Corfield asserts that SUSE discriminated against him on the basis of his gender. Compl. at 18, ECF No. 2. To establish a prima facie claim of gender discrimination, the employee must show that "(1) []he is a member of a protected class; (2) []he suffered an adverse employment action; (3) []he was qualified for the position at issue; and (4) []he was treated less favorably than others not in the protected class." *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007).

Corfield has met the first three elements of a prima facie claim of gender discrimination. Both parties agree that Corfield is a member of a protected class because he is claiming that SUSE discriminated against him because he is a man. *See Mann v. XPO Logistics Freight, Inc.*, 819 F. App'x 585, 594 (10th Cir. 2020) ("Race, age, and gender are all protected classes under federal law."). Both parties also agree that Corfield's termination constitutes an adverse employment action. *See McInerney v. United Air Lines, Inc.*, 463 F. App'x 709, 716 (10th Cir. 2011) (quoting

15

*Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008)) ("Termination of employment is 'clearly an adverse employment action.'"). The court is also persuaded that Corfield was qualified for his position as senior marketing communications manager. Although Corfield received negative feedback from Moh, Corfield had received positive performance reviews for nearly nineteen years prior to Moh's arrival. Corfield Dep. 327:19–23, 341:23–42:7. At the summary judgment stage, the court makes all reasonable inferences in favor of the nonmoving party. Thus, the court concludes that Corfield has established the first three elements of a prima facie gender discrimination claim.

However, Corfield has not met the fourth element and established that he was treated less favorably than other similarly situated individuals who are not in the protected class. Individuals are "similarly situated" when they have worked under the same supervisor, been subjected to the same work standards, and engaged in the same conduct. *MacKenzie v. Denver*, 414 F.3d 1266, 1277 (10th Cir. 2005). Corfield alleges that Moh treated three women—Lunt, Drenner, and Matheson—preferentially by providing them with deadline extensions and holding their work to a lower standard. Corfield Dep. 302:3–05:25. But Corfield relies entirely on his own allegations to establish that Moh treated Drenner and Matheson preferentially. *Id.* Although Corfield *claims* that Moh held these women less accountable, he acknowledges that he has no knowledge of the tasks that Moh assigned to them.[2] *Id.* Furthermore, Lunt, unlike Drenner and Stephens, clearly did not occupy a position similar to Corfield's. Lunt had less than six months of experience and reported directly to Corfield. Corfield Dep. 295:3–95:12. Corfield himself acknowledged that he should not

---

[2] Moreover, contrary to Corfield's claims that Moh treated Drenner preferentially, Moh terminated Drenner due to performance issues near the end of 2021. Moh Dep. 23:2–22.

be compared with Lunt. *See id.* ("Now you're comparing somebody who had 20 plus years' experience with Hannah, who had less than six months. . . . So no, not the same.").

Moreover, Corfield has not established that any of these women engaged in similar conduct to Corfield. The women did not send out a company-wide email referencing the CEO by name in a manner that offended the CEO.  Corfield Dep. 303:8–05:25. Nor does Corfield cite any incident involving an interview candidate complaining about these women conducting themselves unprofessionally during an interview. In other words, Corfield has not produced evidence of a similarly situated female employee who engaged in the same conduct that Corfield was reprimanded for and received preferential treatment.

Alternatively, Corfield argues that even if he cannot meet the fourth prong through a "similarly situated person" comparison, he can meet the fourth prong by "showing [] 'circumstances giving rise to an inference of discrimination.'" *Sorbo v. United Parcel Serv*., 432 F.3d 1169, 1173 (10th Cir. 2005) (quoting *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004)). Corfield argues that the following incidents demonstrate Moh's gender animus: (1) Moh called her direct reports "lieutenants"; (2) Moh referenced the fact that Corfield and Fox had been tasked with purchasing makeup for the CEO; (3) Once or twice, Moh referred to a male member of Corfield's team as "April Ludgate"; (4) Moh misattributed a salacious WIT logo design to a male member of Corfield's team; and (5) Moh once wrote "Good job boys" to Corfield and Fox.

The fourth prong of the prima facie case is flexible and "may be modified to accommodate different factual situations" including "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus." *Plotke v. White*, 405 F.3d 1092, 1099, 1101 (10th Cir. 2005) (cleaned up). Although the fourth prong is flexible, "isolated comments, unrelated to

17

the challenged action, are insufficient to show discriminatory animus in termination decisions." *Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1281 (10th Cir. 2003) (citation omitted); *Barlow v. C.R. Eng., Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (explaining that one "racially-charged situation" involving the N-word did not link the plaintiff's termination to an inference of discrimination).

The court disagrees that the incidences cited by Corfield establish circumstances giving rise to an inference of discrimination. Corfield conceded that Moh's first two references were gender neutral. *See* Corfield Dep. 288:19–21 (acknowledging that "lieutenant" is a gender-neutral term); *id.* at 187:14-19 (acknowledging that both men and women wear makeup on camera.). The court does not find Corfield's explanation for why "April Ludgate" is a gender related insult plausible. Corfield Dep. 54:2–55:17. A single instance of "[g]ood job boys" in combination with Moh's misattribution of a salacious logo to a male employee does not establish a gendered animus that can be imputed to all of Moh's treatment of Corfield. While Moh may have set unrealistically high expectations for Corfield and unfairly blamed Corfield for the Kaizen email, disliking or treating employees unfairly does not constitute a Title VII violation unless the animus is tied to discrimination based on a protected attribute. And Corfield has not provided any evidence supporting his claim that Moh acted with gender animus.

In summary, Corfield has not met the burden of establishing a prima facie case of gender discrimination. Corfield has provided no evidence demonstrating that SUSE treated similarly situated women, preferentially, or that Moh acted with a discriminatory animus. Because Corfield has not made a prima face case of gender discrimination, the court GRANTS summary judgment in favor of SUSE on this claim.

## II.     Age Discrimination

### A.      Prima Facie Claim for Age Discrimination

Corfield also claims that SUSE discriminated against him in violation of the Age Discrimination in Employment Act (ADEA), which prohibits discriminating against individuals over forty years old because of their age. 29 U.S.C. § 623(a)(1). To establish a prima facie case of age discrimination, Corfield must prove that "(1) he is within the protected age group; (2) he was doing satisfactory work; (3) he was discharged; and (4) his position was filled by a younger person." *Rangel v. Sanofi Aventis U.S., LLC*, 507 F. App'x 786, 790 (10th Cir. 2013).

Both parties accept the first and third elements of Corfield's prima facie claim because Corfield was forty-nine years old when he was terminated. Corfield Dep. 9:15–16. As explained above, for the purposes of summary judgment, the second element is accepted as true. However, the parties dispute whether Corfield has met the fourth element. Corfield claims that SUSE hired Spencer Davis as his replacement, but SUSE asserts that it eliminated Corfield's position. It is uncontested that Davis eventually assumed several of Corfield's core responsibilities such as "oversee[ing] creatives that represent the company," managing design services requests, and serving as "lead creative on company events like Sales Summit and SUSECON." Moh Dep. at 225:16–25. Because the record does not establish Davis's age and the court must make all reasonable inferences in favor of the non-moving party, the court concludes that Corfield has met the fourth element and established a prima facie case of age discrimination.

### B.      The Reason Proffered by the Employer

Because Corfield has established a prima facie age discrimination claim, the burden shifts to SUSE to provide a legitimate, non-discriminatory reason for Corfield's termination. The employer's burden is light; it must "merely proffer non-gender based reasons, not prove them."

*See Sprague v. Thorn Ams., Inc.,* 129 F.3d 1355, 1363 (10th Cir. 1997) (quotation marks and citation omitted).

SUSE offers several legitimate reasons for Corfield's termination including his unsatisfactory job performance, lack of self-awareness and inability to accept feedback, poor judgment, tendency to cause confusion among team members, and unprofessional conduct during the interview of a prime recruit. PIP Email, ECF No. 26-3 at 29. SUSE has provided facially legitimate, nondiscriminatory reasons for terminating Corfield.

C.      The Proffered Reason was not Pretextual

Once a defendant-employer articulates a legitimate reason for termination, the burden returns to the plaintiff to demonstrate that the employer's proffered reason was a pretext for discrimination. *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017). The plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original). A plaintiff can show pretext by providing "evidence that the defendant's stated reason for the adverse employment action was false." *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1223 (10th Cir. 2000). A plaintiff does not need to "offer any direct evidence of actual discrimination" to show pretext. *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007). "When it comes to showing pretext, the relevant inquiry is whether the evidence suggests an employer's stated neutral reasons for a dismissal are 'so incoherent, weak, inconsistent or contradictory that a rational factfinder could conclude the reason[ ] [is] unworthy of belief.'" *Kaiser v. Colorado Dep't of Corr.*, 504 F. App'x 739, 740 (10th Cir. 2012) (quoting *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006)). Courts do not consider "whether the employer's proffered reasons were wise, fair or

20

correct, but [only] whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Id.* (citation omitted).

Corfield makes the following arguments as to why SUSE's reasons are pretextual:  (1) Moh's supervision period was short and Moh inadequately reviewed Corfield's alleged performance issues; (2) SUSE did not document the initial decision to terminate Corfield on September 23, 2019, and SUSE improperly handled the investigation into Corfield's discrimination complaint; (3) Moh informed Corfield that his termination was based on reasons that were not included in Corfield's PIP; and (4) Moh informed Corfield that his termination was due in part to the elimination of his position, but Corfield's position had not been eliminated. The court addresses each in turn.

            1)        Moh's Supervision

The fact that Moh terminated Corfield four months after she had been hired as his supervisor does not establish that Moh terminated Corfield for pretextual reasons. Corfield has not articulated how being terminated shortly after a change in management demonstrates pretext. *See Brown v. Time, Inc.*, No. 95 CIV. 10081 (MBN), 1997 WL 231143, at *12 (S.D.N.Y. May 7, 1997) ([A] change in management's evaluation of an employee's performance cannot by itself raise an inference of pretext. . . . [S]uch an inference is even less permissible when a new supervisor is appointed, who is entitled to set his own standards and agenda."). Moh provided several reasons for Corfield's termination including the problematic WIT logo, Jessica Park interview, Kaizen email, difficulties with the SUSECON creative process, complaints from Eames and Harris, and inability to adapt to constructive criticism. PIP Email, ECF No. 26-3 at 29. While Corfield asserts that he was "wrongfully blamed" for these incidences and that Moh had inadequately investigated them, Corfield has not provided any evidence to support his assertions. Pl.'s Mem. Opp'n 36–37,

ECF No. 41. Corfield's disagreement with Moh's interpretation of the events is not evidence that establishes that Moh's reasons are "so incoherent" as to be unworthy of belief. *See Wright v. Wyandotte Cnty. Sheriff's Dep't*, 963 F. Supp. 1029, 1038 (D. Kan. 1997) ("Mere disagreement with an employer's adverse employment actions is not sufficient to establish pretext."). And the court will "not [] act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Kaiser*, 504 F. App'x 740 (citation omitted).

Alternatively, Corfield argues that the quick reversal in Moh's opinion of Corfield prior to his termination establishes pretext. As of September 10, 2019, Moh supported Corfield's off-cycle promotion. *See* Email from April Moh, Chief Commc'n Officer, SUSE, to Jeanne Lyon, Consulting HR, SUSE, (Sept. 10, 2019, 7:50 a.m.), ECF No. 41-2 at 226. Two days later, Moh decided that Corfield's promotion should be delayed. *See* Email from April Moh, Chief Commc'n Officer, SUSE, to Steve Gilliver, Vice President, SUSE Human Resources, Jeanne Lyon, Consulting HR, SUSE, and Michael Miller, President Corp. Dev. & Strategic All., SUSE, (Sept. 12, 2019 at 11:11 a.m.), ECF No. 26-3 at 28. Two weeks later, Moh went from supporting Corfield's promotion to drafting a PIP for Corfield. PIP Email, ECF No. 26-3 at 29. Two days after drafting the PIP, Moh decided to terminate Corfield. Hall Dep. 28:18–23; Moh Dep. 169:22–170:3; Lyon Dep. 44:15–24. In other words, in the span of six weeks, Moh went from supporting Corfield's promotion to advocating his termination. Juxtaposed against Corfield's nineteen-year tenure at SUSE, Corfield argues the quick decision to terminate Corfield demonstrates pretext.

However, the timing and Moh's conduct is not suggestive of pretext when considered in context. SUSE hired Moh in July 2019. Moh Dep. 25:18–23. During Moh's very first in-person meeting with Corfield, Corfield requested a promotion. Corfield Dep. 25:7. Immediately thereafter, Corfield obtained support for his promotion from Miller, who was Moh's supervisor. In

light of the fact that Moh did not have much experience working with Corfield and Corfield had obtained her supervisor's approval, it is not suspicious that Moh did not independently conduct a performance review of Corfield or review nearly twenty years of performance reviews before approving his promotion. After working more closely with Corfield in August and September, Moh decided to delay his promotion to provide him with more mentoring. Email from April Moh, Chief Commc'n Officer, SUSE, to Steve Gilliver, Vice President, SUSE Human Resources, Jeanne Lyon, Consulting HR, SUSE, and Michael Miller, President Corp. Dev. & Strategic All., SUSE, (Sept. 12, 2019 at 11:11 a.m.), ECF No. 26-3 at 28. But several incidences occurred in September that caused Moh to rethink her decision. These events include the problematic WIT logo, Jessica Park interview, and Kaizen email. Upon receiving additional criticism from Corfield's coworkers concerning his performance, Moh drafted a PIP for Corfield. Although Moh initially intended to implement the PIP, after discussing the situation with Hall, Moh concluded that it would be more appropriate to terminate Corfield. Moh Dep. 167:1–18, 169:22–70:3. In other words, even though Moh quickly reversed her opinion on Corfield, the circumstances reveal that the reversal was not suspicious, let alone evidence of pretext.

2)      Lack of Documentation and Discrimination Investigation

Corfield argues that it was unclear whether the decision to terminate him was made before or after he filed his discrimination complaint. Pl.'s Mem. Opp'n 38, ECF No. 41. The court disagrees. Corfield filed his discrimination complaint against Moh on September 30, 2019. Email from Scott Corfield, Senior Marketing Manager, SUSE, to Steve Gilliver, Vice President Human Resources, SUSE, (Sept. 30, 2019, 5:27 p.m.), ECF No. 41-2 at 445. However, Moh had already drafted Corfield's PIP by September 21, 2019. PIP Email, ECF No. 26-3 at 29. Moh, Hall, and Lyon met to discuss Corfield's PIP on September 23, 2019 at 8:00 a.m. pacific time. Meeting

Invitation (Sept. 23, 2019, 8:00 a.m. PDT), ECF No. 41-2 at 283. After learning that Corfield had

lost Di Donato's confidence and that Moh did not believe Corfield would be willing to adapt to

feedback, Hall recommended terminating Corfield rather than implementing a PIP. Hall Dep.

26:16–28:4, ECF No. 41-2 at 322. Prior to advocating termination, Hall asked Moh whether

anything she had done or anything Corfield had said would cause her to believe that Corfield may

bring a discrimination complaint against SUSE in connection with his termination. *Id.* at 27:17–

28:1. Moh did not believe so. *Id.* at 28:2 ("And she told me, No, absolutely not."). Lyon, Hall, and

Moh all testified that, by the conclusion of the meeting, they had decided to terminate Corfield. *Id.*

at 28:18–23; Moh Dep. 169:22–170:3; Lyon Dep. 44:15–24.

Corfield asserts that the fact that SUSE did not produce a written record of this meeting

renders the matter of whether his termination occurred at this meeting a materially disputed fact.

*See* Pl.'s Mem. Opp'n, ECF No. 41 (observing that Lyon did not take notes at the September 23,

2019 meeting, even though she usually takes notes).[3] The court disagrees. A party may support a

motion for summary judgment using documentary evidence or "other materials in the record,

including depositions." Fed. R. Civ. P. 56(c). Considering Moh, Lyon, and Hall's testimony that

they had decided to terminate Corfield during the September 23, 2019 meeting, the absence of

written meeting notes, without more, does not create a dispute of material fact.[4]

---

[3] Corfield makes several additional frivolous arguments in an attempt to discredit the date that the meeting occurred. For example, Corfield asserts that the fact that the meeting invite did not mention the terms "Corfield" or "PIP" in the subject line creates a dispute of material fact. Corfield also asserts that it was unclear whether Hall or Lyon emailed the link to attend the meeting. But these ambiguities concern tangential issues and are immaterial.

[4] Further undercutting Corfield's claim, Lyon scheduled a meeting between Moh and an HR representative for September 30, 2019 to finalize Corfield's termination. Email from Jeanne Lyon, Consulting HR, SUSE, to Steve Gilliver, Vice President Human Resources, SUSE, (Sept. 30, 2019,

Alternatively, Corfield claims that his termination was pretextual because he notified SUSE of his concerns prior to filing his formal complaint on September 30, 2019. Specifically, Corfield asserts that he notified SUSE either on September 20, 2019, through his email to Miller, or on September 23, 2019, during his call with Miller.

Corfield emailed Miller on September 20, 2019 requesting a confidential meeting. Email from Scott Corfield, Senior Marketing Communications Manager, SUSE, to Michael Miller, President Corp. Dev. & Strategic All., SUSE, (Sept. 20, 2019) ("I know you're probably insanely busy right now with all these changes taking place. I've always highly respected your leadership skills and business acumen. I could really use some advice from you [smiley face emoji][.] I'm hoping I can find 30 minutes this week for a  quick chat?"); Email from Michael Miller, President Corp. Dev. & Strategic All., SUSE, to Scott Corfield, Senior Marketing Communications Manager, SUSE (Sept. 20, 2019, 2:13 a.m.), ECF No. 41-2 at 341 ("Hi Scott—sorry but I'm having a crazy day over here between London and Amsterdam and won't be able to do a call today"). However, nothing in that email refers to discrimination. After receiving Corfield's email, Miller informed Moh that same day that Corfield had requested a confidential meeting. Moh Dep. 147:13–25. Miller asked Moh whether there was anything he needed to be aware of regarding Corfield. *Id.* at 147:24–148:24. Moh responded that there was nothing in particular, but that she was working with Corfield on performance issues. *Id.* On September 21, 2019, Moh sent Corfield's PIP to Lyon. PIP Email, ECF No. 26-3 at 29. It is plausible to infer that Moh drafted the PIP as a result of learning that Corfield had requested a confidential meeting with her supervisor. However, this inference

---

5:06 p.m.), ECF No. 41-2 at 441. This meeting was cancelled because Corfield filed his discrimination complaint. *Id.*

does not establish pretext because the email provided no indication that Corfield wanted to speak with Miller about discriminatory incidences.

On September 23, 2019, sometime after 8:00 am, Corfield called Miller and expressed his concerns regarding Moh's leadership. Email from Michael Miller, President Corp. Dev. & Strategic All., SUSE, to Jeanne Lyon, Consulting HR, SUSE, (Oct. 1, 2019, 6:49 a.m. PDT), ECF No. 41-2 at 439 ("The call took place on Monday 23 Sept at 9.30am Pacific for 30min"). Corfield mentioned the phrase "hostile work environment" during this conversation. Corfield Dep. 196:17–25. In other words, the earliest instance of Corfield expressing his concerns regarding discrimination to anyone at SUSE occurred only after SUSE had already reached the decision to terminate Corfield.[5]

While the court is bound to draw reasonable inferences in favor of the plaintiff, it *cannot* make inferences when they are clearly unreasonable. In light of the consistent deposition testimony, which indicates that the decision to terminate Corfield was made by September 23, 2019 at 8:30 a.m.,[6] no reasonable jury could conclude that Moh decided to terminate Corfield with knowledge of his informal conversation with Miller that would occurr later that day, let alone with knowledge of the formal complaint that Corfield would file on September 30, one week afterwards.

Alternatively, Corfield asserts that the fact that Lyon, who was involved in the September 23, 2019 termination meeting, was then assigned to investigate his discrimination claims establishes pretext. The court disagrees. Lyon had prior experience investigating discrimination

---

[5] Miller testified that he never told Moh about his conversation with Corfield on September 23, 2019. Miller Dep. 36:24–37:1, ECF No. 41-2 at 268.

[6] The meeting began at 8:00 a.m. and was scheduled to last half an hour. Meeting Invitation (Sept. 23, 2019, 8:00 a.m. PDT), ECF No. 41-2 at 283.

claims. *See* Email from Matthew Hall, Counsel, SUSE, to Steve Gilliver, Vice President Human Resources, SUSE (Sep. 30, 2019, 8:23 p.m.), ECF No. 41-2 at 443; Gilliver Dep. 47:15–18. Moreover, Lyon's interviews and findings were independently reviewed by Gilliver, who had no role in the PIP meeting or the initial termination decision. Gilliver Dep. 46:18–49:14. Thus, the court concludes that the undisputed facts concerning the September 23, 2019 meeting, the timing of Corfield's termination, and the investigation into his discrimination claims do not provide a basis for concluding that his termination was pretextual.

### 3)   PIP Rationale

Corfield argues that the fact that Moh terminated him for "failure of leadership" and the elimination of his position, which were reasons that were not included in the PIP, establish that his termination was pretextual. Pl.'s Mem. Opp'n 50, ECF No. 41. The court disagrees. First, although the PIP did not explicitly include the term "failure of leadership," several of the reasons stated in the PIP—including poor judgment, mishandling the interview of a prime recruit, and confusing communication with teammates, could be interpreted as or contribute to a failure of leadership. PIP Email, ECF No. 26-3 at 29. It is not inconsistent to rephrase a rationale.  Second, when Moh initially drafted the PIP, she did not intend to terminate Corfield's position. It would be counterintuitive for a performance improvement plan, which is targeted at improving the employee's performance, to terminate the employee's position. In short, the court concludes the omission of these rationales from the PIP does not indicate that Moh's rationales were pretextual.

### 4)   Elimination of Corfield's Position

Finally, Corfield asserts that Moh falsely asserted that Corfield's position had been eliminated. According to Corfield, SUSE hired Davis as his replacement. Pl.'s Mem. Opp'n 39–40, ECF No. 41. Davis assumed some of Corfield's prior responsibilities such as "oversee[ing]

27

creatives that represent the company," managing design services requests, and serving as "lead creative on company events like Sales Summit and SUSECON." Moh Dep. 225:16-25. To support his claim, Corfield cites an email that Davis sent to Moh asking for clarification on the scope of his role. Email from Spencer Davis to April Moh, Chief Commc'n Officer, SUSE, (Nov. 20, 2019, 9:10 p.m.), ECF No. 41-2, at 357 ("What was Scott's role? How much overlap exists in his old and my new responsibilities?").

However, "[t]he test for position elimination is not whether the responsibilities were still performed, but rather whether the responsibilities still constituted a single, distinct position." *Myers v. Colgate-Palmolive Co.*, 102 F. Supp. 2d 1208, 1216 (D. Kan. 2000) (quotation marks and citation omitted). Immediately following Corfield's termination, Corfield's responsibilities were split between Lunt and Fox. *See* Def.'s Resp. to Pl.'s First Set Written Disc. to Def., Interrog. No. 8, ECF No. 26-8 ("Fox assumed Corfield's administrative and managerial duties" and Lunt "oversaw completion of some of Corfield's projects."). The initial division of Corfield's responsibilities supports SUSE's claim that Corfields' role was eliminated.

Immediately following Corfield's termination, Moh eliminated Corfield's team. Moh Dep. 216:19–17:17 ("[Corfield's] team ceased to exist when [Corfield] was terminated."). Moh decided that the SUSE global newsletter, which Corfield's team had previously published, was no longer necessary. *Id.* at 217:18–18:11. Moh also decided that individual teams could send out their own mass email communications instead of funneling their emails through Corfield's team. *Id.* Moh shifted the customer storytelling aspect of Corfield's team to a different team and created a new brand team that was responsible for providing designs and creative content. *Id.*

In November 2019, Moh hired Davis for a principal designer role. *Id.* at 110:17–13:4. Prior to his termination, Corfield would have supervised this role. *Id.* In March 2021, Moh promoted

Davis to lead the team. *Id.* at 226:1–6. Both parties agree that as leader of the brand team, Davis assumed some of Corfield's core responsibilities. But between Davis being hired for a role that Corfield was meant to supervise, the transition period involving Fox and Lunt, and the reorganization of the teams and their responsibilities, Davis's email requesting clarification on his role does not establish that Davis unilaterally replaced Corfield. In short, the court is not persuaded that SUSE falsely claimed that Corfield's role had been eliminated.

In summary, although Corfield argues that SUSE pretextually terminated him, Corfield has not established a genuine dispute of material fact undermining SUSE's proffered reasons for termination, let alone demonstrated that discrimination was the real motive. Corfield has not met his burden with respect to the third stage of the *McDonnell-Douglas* burden shifting test. Accordingly, the court GRANTS summary judgment in favor of SUSE on Corfield's age discrimination claim.

## III. Hostile Work Environment

Corfield alleges that SUSE created a hostile work environment. To survive summary judgment, a plaintiff must "show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Payan v. United Parcel Serv.*, 905 F.3d 1162, 1171 (10th Cir. 2018) (quotation marks and citation omitted). He "must show an environment that was both objectively and subjectively hostile." *Id.* In evaluating the circumstances, courts "consider[] such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citation omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely

29

serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Clark Cnty. Sch. Dist. V. Breeden*, 532 U.S. 268, 271 (2001) (citation omitted). Finally, Plaintiff must also provide "evidence from which a rational jury could infer that []he was targeted for harassment because of [his] gender [or age]. . . ." *Sandoval v. Boulder Reg'l Commc'ns Ctr.*, 388 F.3d 1312, 1327 (10th Cir. 2004).

Although isolated incidences of discriminatory language do not give rise to liability, the court must "careful[ly] consider[] the social context in which [the] particular behavior occurs and is experienced by its target." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). The Tenth Circuit has noted that "the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact." *O'Shea v. Yellow Tech Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999) (quotation marks omitted). In this case, even after applying the Tenth Circuit's guidance, the court is persuaded that Corfield has not proffered facts from which a reasonable jury could conclude that SUSE permitted severe and pervasive discriminatory activity related to protected attributes.

Corfield cites the same evidence to support his hostile work environment claim as his gender discrimination claim. Namely, Corfield asserts that Moh used demeaning language such as the terms "boys," "April Ludgate," and "lieutenants." Pl.'s Mem. Opp'n 40–41, ECF No. 41. Corfield alleges that Moh's misattribution of the inappropriate WIT logo to a male employee and her reference to the fact that he was sent to purchase makeup demonstrates her gender animus. *Id.* In addition, Corfield asserts that Moh created a hostile work environment by accelerating his project deadlines and restricting his ability to send out mass emails. *Id.* at 41.

As discussed in the gender discrimination analysis, the court is not persuaded that the incidents above support an objective inference of pervasive gender-based animus. Moh used the

term "boys" once, in the context of an email commending Corfield. The term "lieutenant" is gender neutral. Corfield Dep. 288:19–21. Moreover, the court remains unconvinced by Corfield's explanation that "April Ludgate" is a gender-loaded term because it is a gender-based offense to refer to a man by a fictional woman's name. *Id.* at 54:2–55:17. Moreover, Corfield himself conceded that men also purchase makeup. *Id.* at 187:14–19. Corfield recalls only two instances where Moh referred to his male colleague as "April Ludgate," and Moh referenced the makeup incident only once, in the context of praising Corfield. While Corfield may have subjectively felt that these incidents created a hostile workplace, no objective person could conclude that these instances were hostile, let alone pervasive and severe. *See Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1223 (10th Cir. 2015) (explaining that the "plaintiff must show more than a few isolated incidents of [gender-based] enmity.").

When a plaintiff has demonstrated that the gender-motivated behavior is pervasive, a court may consider whether a gendered animus belies other seemingly neutral actions. *See O'Shea v. Yellow Tech. Servs., Inc.,* 185 F.3d 1093, 1102 (10th Cir. 1999). However, to impute discrimination based on a protected class attribute to neutral actions, "[p]roof of isolated incidents are not enough; 'there must be a steady barrage of opprobrious racial comments.'" *Villamar v. Lincare, Inc.*, 624 F. App'x 658, 660 (10th Cir. 2015) (explaining that racially neutral conduct cannot be attributed to creating a hostile workplace where the employer had only made three "boorish and crude" racially charged comments). In other words, if Corfield had demonstrated that Moh consistently used discriminatory language and engaged in hostile conduct evidencing gender animus, then Moh's neutral action of accelerating Corfield's project deadlines and restricting Corfield from sending mass emails may be considered as contributing to the allegedly hostile work environment. But as

31

Corfield has provided no evidence that plausibly establishes his hostile work environment claim, the court cannot logically connect Moh's acceleration of Corfield's deadlines to this claim.

In short, nothing in Moh's language or actions objectively demonstrated gender-based enmity. Moreover, Moh's comments were not pervasive or severe. Her comments and actions did not unreasonably interfere with Corfield's ability to perform his work, and they did not alter the conditions of his employment. Because Corfield has not established a prima facie hostile work environment case, the court GRANTS summary judgment to SUSE on this claim.

## IV.    Retaliation

Corfield argues that SUSE retaliated against him for engaging in protected activities. To establish a prima facie claim of retaliation, the plaintiff "must present evidence of three things—that he engaged in protected activity, that he suffered an adverse employment action, and that a close causal link exists between the two." *Barrett*, 754 F.3d at 866–67.

Corfield has established two of the three elements of a prima facie retaliation case. First, Corfield engaged in protected activity by filing a complaint against Moh with Gilliver on September 30, 2019. Email from Scott Corfield, Senior Marketing Manager, SUSE, to Steve Gilliver, Vice President Human Resources, SUSE, (Sept. 30, 2019, 5:27 p.m.), ECF No. 41-2 at 445. Title VII protects both formal and informal reporting of discrimination complaints to a superior. *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008). Second, as previously emphasized, Corfield's termination qualifies as an adverse employment action. *McInerney*, 463 F. App'x at 716.

According to Corfield, the fact that SUSE terminated him within a month and a half of the date that he filed his complaint is proof that he was retaliated against for filing his complaint. *See* Pl.'s Mem. Opp'n 51, ECF No. 41. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th

Cir. 1999) ("[A] one and one-half month period between protected activity and adverse action may, by itself, establish causation."). While this is generally true, knowledge of the protected activity is also necessary to prove retaliation. *See United States ex rel. Reed v. KeyPoint Gov't Sols*., 923 F.3d 729, 766 (10th Cir. 2019) ("To adequately plead a retaliation claim, a plaintiff must aver that the defendant was on notice of [his] protected activity.").

The record clearly demonstrates that no one involved in Corfield's termination decision, prior to reaching the decision to terminate Corfield, had any knowledge that Corfield had filed or would file a discrimination complaint against Moh. Moh, Hall, and Lyon reached the joint decision to terminate Corfield on September 23, 2019 by 8:30 a.m. Hall Dep. at 28:18–23; Moh Dep. 169:22–170:3; Lyon Dep. 44:15–24. During the meeting Moh unequivocally expressed to Hall that she did not believe that Corfield had any reasons to bring a discrimination claim. Hall Dep. at 27:17–28:2. Corfield filed his discrimination complaint with Gillers on September 30, 2019—a week after Moh, Hall, and Lyon had already decided to terminate Corfield.

Moreover, even if the court assumes that Corfield first reported Moh's discrimination to Miller on September 23, 2019 at 9:00 a.m., the parties involved in Corfield's termination could not have any knowledge of a conversation that would occur half-an-hour later. Corfield acknowledges that he first raised concerns regarding discrimination to a superior at SUSE during his meeting with Miller on September 23. Lyon and Hall did not learn about the contents of Corfield's conversation with Miller until they were tasked with investigating Corfield's complaint and Miller never told Moh about his conversation with Corfield. Miller Dep. 36:24–37:4. In other words, at the time they made the decision to terminate Corfield, not only were the parties involved in Corfield's termination unaware of Corfield's discrimination claims, Corfield had not even reported them.

Because Corfield cannot establish that Moh, Hall, and Lyon knew that he was filing a complaint prior to making their decision to terminate him, Corfield cannot establish the causal element of retaliation based on the timing of his termination alone. In short, Corfield has failed to provide facts supporting a prima facie case of retaliation. Thus, the court GRANTS summary judgment to SUSE on this claim.

### CONCLUSION & ORDER

For the aforementioned reasons, Corfield has not established a prima facie case of gender discrimination, hostile work environment, or retaliation. As such, the court GRANTS summary judgment in favor of SUSE on these claims. While Corfield has established a prima face case of age discrimination, SUSE has provided non-discriminatory reasons for terminating Corfield, and Corfield has not demonstrated that these reasons are pretextual. Accordingly, the court GRANTS summary judgment in favor of SUSE on Corfield's age discrimination claim.

DATED July 27, 2023.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge